**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MARCUS NELSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 09-1594 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Marcus Nelson and his fiancé Koryn Rubin sued the District of Columbia and

District of Columbia Metropolitan Police Department Officers Walter Pankowski and Nathan

Foster for false arrest and imprisonment and Fourth Amendment violations.  A jury found that

defendant Foster violated Rubin's Fourth Amendment rights when he "unreasonably detain[ed]

her" during a search of her home.  Verdict Form, Jan. 10, 2012, ECF No. 45.  The jury awarded

Rubin $12,500 in compensatory damages.  *Id.*  However, the jury found against plaintiff Nelson

with respect to his false arrest and imprisonment claim and one Fourth Amendment claim and

hung with respect to Nelson's other claims.  *Id.*  A partial retrial resulted in a mistrial.  *See*

Minute Entry, Mar. 28, 2012.  The parties opted not to pursue a third trial and, pursuant to a

consent motion, the Court entered judgment in favor of Rubin on March 22, 2013.  Consent Mot.

Dismiss, ECF No. 60; Order, ECF No. 61.

The Court now considers Foster's Motion [64] for Judgment as a Matter of Law (JMOL).

Foster argues that Rubin failed to produce sufficient evidence to establish the unreasonableness

of her detention during the search.  Def.'s Mot. J. Matter Law 6 [hereinafter Def.'s Mot. JMOL].

Second, Foster argues that he is, in any event, entitled to qualified immunity.  *Id.* at 8.

Because a reasonable jury could find that Foster violated Rubin's Fourth Amendment rights when he detained and handcuffed her for two hours during the search of her apartment, the Court rejects the first argument.  Because the defendant failed, during the first trial, to move for JMOL on the basis of qualified immunity, the Court rejects defendant's second argument as well. The motion for JMOL is DENIED.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) provides

> If a party has been fully heard on an issue during a jury trial and the court finds
> that a reasonable jury would not have a legally sufficient basis to find for the
> party on that issue, the court may (A) resolve the issue against the party; and (B)
> grant a motion for judgment as a matter of law . . . .

If the Court does not grant such a motion during trial, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  *Id.* 50(b).  The movant may file a "renewed" Rule 50(b) motion for JMOL "[n]o later than 28 days after the entry of judgment . . . ."  *Id.*  However, a district court may only grant a Rule 50(b) motion "on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."  9B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2537 (3d ed.); *see also id.* ("[T]he movant cannot assert a ground that was not included in the earlier motion."); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

Courts "should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that

party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (internal quotation marks omitted). The standard for granting JMOL "mirrors" that for granting summary judgment; "the inquiry under each is the same." *Id.* at 150 (internal quotation marks omitted). Thus, while a court should examine all evidence in the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.*

Moreover, courts "do not . . . lightly disturb a jury verdict. Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are *so one-sided* that reasonable men and women *could not have reached a verdict in plaintiff's favor.*" *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) (emphasis added) (internal quotation marks omitted).

## II.     BACKGROUND

On or about June 19, 2008, Marcus Nelson was driving in Washington, D.C., when he was pulled over by at least two police officers. Trial Tr. 21–22, Jan. 5, 2012. The officers performed a window tint test on Nelson's car, notified him that the windows were too dark, and then asked to search his vehicle. *Id.* at 24. Nelson testified that he refused to consent to the search, though Officer Foster disputed this. *Id.* at 26; Trial Tr. 6, Jan. 6, 2012. Nelson also refused to get out of his vehicle to allow the search to proceed unless the officers arrested him. Trial Tr. 29–30, Jan. 5, 2012. An officer notified him that he was under arrest and Nelson exited the vehicle. *Id.*

During a search of Nelson's vehicle, officers discovered a backpack containing a gun with a loaded magazine. Nelson testified that he had visited a firing range in Virginia earlier that

day and still had the gun, which was registered in Maryland, in his possession.  After discovering the gun, officers arrested Nelson and took him to jail.  *Id.* at 53, 54.

Officers later sought and obtained a search warrant for the apartment that Nelson shared with Rubin in Washington, D.C.  The affidavit requested, and the warrant authorized, permission to search the apartment for firearms, ammunition, firearm cleaning kits, and all documents evidencing possession or acquisition of a firearm.

When officers executed that search warrant, Rubin was the only person in the home.  Nelson remained in jail at the time of execution.  Rubin testified that, as she was getting dressed and was wearing only a bra and underwear, she heard pounding on the front door.  Trial Tr. 58–59, Jan. 5, 2012.  She asserted that the police knocked down the door, entered the apartment, and initially refused to let her get dressed.  *Id.* at 59.  After a moment, they brought her a change of clothes, allowed her to dress, and then handcuffed her arms behind her back.  *Id.* at 59, 62.  Rubin estimated that there were five to ten officers in the apartment during the search and that they left her handcuffed for two hours.  *Id.* at 60, 62, 72; *see also* Trial Tr. 33, Jan. 6, 2012 (testimony of Officer Nelson stating that there were approximately ten police officers searching the apartment and that Rubin was handcuffed for two hours).  Finally, Rubin testified that the officers accused her fiancé of being a drug dealer and taunted her during the search.

## III.    ANALYSIS

Judgment was entered in this case on March 22, 2013 and the motion for JMOL was filed within 28 days thereafter.[1]  Thus, the motion was timely.

---

[1] A quick glance at the docket suggests that judgment was entered on March 20, 2013.  However, this was the date that the judgment was filed with the Clerk and not the date that the judgment was "entered" on the docket.  A judgment is "entered" when it is "entered on the civil docket . . . ."  Fed. R. Civ. P. 58(c)(2).  This occurred on March 22, 2013.

Again, defendant asserts two grounds for JMOL.  First, that the evidence plaintiff presented at trial was "insufficient as a matter of law to establish a violation of Plaintiff Rubin's Fourth Amendment rights."  Def.'s Mem. 3.  Second, that defendant enjoys qualified immunity.  *Id.*  Defendant claims that he raised these grounds in his preverdict Rule 50(a) motions.  *Id.* at 5.  However, defendant provides no citation to the record for this assertion.  Although the Court agrees that defendant sought JMOL on the basis that plaintiff had failed to make her case as a matter of law, there is no evidence that defendant appropriately raised the qualified immunity argument in his preverdict Rule 50(a) motions.[2]

### A.  Sufficiency as a Matter of Law

Foster first argues that the evidence presented at trial was insufficient to show that Foster violated Rubin's Fourth amendment rights when he detained and handcuffed her during a search of her apartment.  Foster asserts that, in executing a search warrant, "'officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search.'"  Def.'s Mem. 6 (quoting *Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 614 (2007)).  "'The "reasonableness" of a particular use of force,'" he states, "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Foster cites the Supreme Court's decision in *Muehler v. Mena* for the proposition that, during a search, officers may lawfully restrain the occupant of a home in handcuffs, particularly where the police are searching for weapons.  *Id.* at 7 (citing 452 U.S. 692, 702–03 (1981)).

---

[2] Defendant's attorney stated: "I want to make a motion for . . . judgment as a matter of law, Your Honor. . . .  We would . . . submit that as to the manner in which the warrant was executed that no reasonable juror could find that it was excessive.  The case law is legion as to the use of handcuffs."  Trial Tr. 39–40, Jan. 6, 2012.  The Court denied that motion.  *Id.* at 41.  Defendants rested their case and then renewed their motion for JMOL without presenting further argument.  *Id.* at 42–43.  The Court again denied the motion, except as to a claim against Pankowski not relevant to the present motion.  *Id.* at 52.  There was no mention during the first trial of qualified immunity.

It is true that the reasonableness of an action to secure the premises is judged from the perspective of a reasonable officer. Moreover, the Supreme Court's decision in *Mena* suggests that handcuffing residents may be appropriate at times. However, *Mena* is distinguishable from the case at hand. That case involved investigation into a gang-related, driveby shooting and the search of a home believed to be occupied by one member of the gang. *Mena*, 544 U.S. at 95. The police suspected that the gang member was "armed and dangerous, since he had recently been involved in the driveby shooting." The search warrant authorized searching the house for both deadly weapons and evidence of gang membership. When the search was executed early one morning, the police detained Mena and three other individuals found on the property. The four individuals were handcuffed and taken into a converted garage where one to two officers guarded them for two to three hours during the search. *Id.* at 95, 100. The search yielded a handgun, ammunition, baseball bats with gang writing, additional gang paraphernalia, and marijuana. Mena sued the officers, alleging that she was detained for an "unreasonable time and in an unreasonable manner." *Id.* at 96.

Although the Supreme Court held that Mena's detention in handcuffs was reasonable, the Court relied on a number of factors not present in this case. First, the search in *Mena* was not just for weapons, but for "a wanted gang member [who] reside[d] on the premises." *Id.* at 100. Here, although the search was conducted for weapons, the police did not assert that Nelson was a member of a gang. Moreover, Nelson was in jail at the time of the search and thus the police were not searching for a wanted, armed criminal. The police did not assert that they were concerned that an armed confederate of Nelson's might be in the apartment. Instead, they found his twenty five year old fiancé.

The Court in *Mena* also noted that "the need to detain multiple occupants" there "made the use of handcuffs all the more reasonable." *Id.* The Court highlighted the ratio detainees to guards—two to one. *Id.* ("[T]his case involved the detention of four detainees by two officers."). Here, by contrast, only one individual occupied the residence when the search was conducted. Moreover, the search of Rubin's one bedroom apartment was conducted by up to ten police officers, one or even two of whom could surely have been spared to guard Rubin directly.

Viewing the evidence in the light most favorable to the moving party, a reasonable jury could conclude that Foster unlawfully detained Rubin while searching her apartment. Officers knew that Rubin's fiancé was in jail at the time of the search, and thus would not have expected him to be present in the house. Moreover, once the officers entered the home, they discovered that Rubin was the only individual present. She testified that she was undressed when officers arrived. This made it quite apparent that she was unarmed. Moreover, up to ten officers were present for the search. Given all of these factors, the jury could reasonably have concluded that a reasonable officer would not have been sufficiently concerned for his or her safety, or the safety of the resident, to justify handcuffing that resident's hands behind her back for two hours. Moreover, the efficacy of the search would not have been of concern to a reasonable officer when there were up to ten officers present to watch the plaintiff to ensure that she did not conceal or destroy evidence during the search. The Court will not disturb the jury's verdict in these circumstances.

### B.    Defendant Failed to Raise Qualified Immunity Defense

The defendant asserts that he moved for JMOL at the close of plaintiff's case and the close of all evidence. However, the record demonstrates that defendant moved for JMOL only on the basis that plaintiff had failed to meet her substantive burden on the merits. *See supra* n.3.

It is true that defendants raised a qualified immunity defense in preverdict 50(a) motions during the *second* trial. *See* Trial Tr. 98–99, Mar. 26, 2012 (asserting that defendants are entitled to qualified immunity as to the search of the home). However, the second trial did not concern the judgment at issue here. Instead, after the first jury found for Rubin on her Fourth Amendment claim, the parties limited the second trial to *Nelson's* false arrest and Fourth Amendment claims. *See, e.g.*, Def.'s Proposed Verdict Form, Mar. 23, 2012, ECF No. 53. These claims involved Nelson's, not Rubin's rights.

Moreover, even though judgment for Rubin had not yet been entered at the time of the second trial, defendants clearly contemplated that it would be entered and that Rubin's claims had been disposed of. *See* District of Columbia's Opp'n to Pl.'s Proposed Order of J. (noting that a proposed order to docket Rubin's judgment was "satisfactory to the Defendants except for the position that provides for the order to be entered *nunc pro tunc*" and requesting that the Court delay entry of the judgment only until after the partial retrial).

In short, defendants' invocation of a qualified immunity defense during the second trial did not preserve their ability to raise that defense with respect to a matter decided in the first trial. Defendants may not move for JMOL on grounds not raised in their preverdict Rule 50(a) motions in the relevant trial. As a result, the Court will deny Foster's motion for JMOL on qualified immunity grounds.[3]

---

[3] Although not necessary for the Court's decision, the Court also notes that Foster failed to file any *pre*-trial dispositive motions raising the qualified immunity defense. Foster listed qualified immunity as a defense in his Answer but never bothered to move for dismissal or summary judgment on that basis. *See* Answer 6, ECF No. 25. While Foster was nevertheless allowed to raise the issue at trial, the far better practice would have been to raise the issue in a pre-trial dispositive motion. *See Iacobucci v. Boulter*, 193 F.3d 14, 22 (1st Cir. 1999) ("Although qualified immunity normally should be resolved early in the litigation, the defense, if preserved, may be pressed at later stages, including in a timeous post-trial motion.") (internal citations omitted).

**IV.     CONCLUSION AND ORDER**

Because a reasonable jury could find that Foster unlawfully detained Rubin during a search of her home, and because Foster failed to raise his qualified immunity defense during the relevant preverdict Rule 50(a) motions, the Court will deny Foster's motion for JMOL.

The Court's decision also renders moot the defendant's motion [65] to stay litigation on plaintiff's motion for attorney's fees until the Court rules on the motion for JMOL.

Thus, for the reasons stated above, it is hereby

**ORDERED** that Foster's Motion [64] for Judgment as a Matter of Law is **DENIED**; and it is further

**ORDERED** that Foster's Motion [65] to stay litigation on plaintiff's motion [63] for attorney's fees be **DENIED AS MOOT**; and it is further

**ORDERED** that defendants shall have fourteen days from today's date to submit an opposition to plaintiff's motion [63] for attorney's fees.

**SO ORDERED.**

Signed by Royce C. Lamberth, on July 12, 2013.