# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARCUS NELSON, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 09-1594 (RCL) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Before the Court is plaintiff Koryn Rubin's Motion for attorney's fees and litigation costs. Dkt. No. 63. Ms. Rubin seeks $43,957.50 in fees for 92.5 hours of work, and $1,289.80 in costs. Defendant District of Columbia concedes the costs, Dkt. No. 73-1, but requests a reduction of the attorney's fees sought to $8,792.50, or 20%, then an additional five percent reduction of that number for quarter-hour billing, Dkt. No. 73. For the reasons given below, the Court awards Ms. Rubin $21,978.75 in attorney's fees, or 50% of the amount sought, in addition to the $1,289.80 in costs.

### I. BACKGROUND

This dispute over attorney's fees arose from facts surrounding two plaintiffs, Marcus Nelson and Koryn Rubin. The alleged underlying facts are as follows: After stopping and searching Mr. Nelson's automobile, D.C. police officers arrested him for possession of an illegal handgun. *See* Dkt. No. 22 at 2, 4. Mr. Nelson spent several days in jail following the arrest. *Id.* at 3. While he was there, officers obtained a warrant and searched Mr. Nelson's home while Ms.

Rubin was there. *Id.* at 2–3. During the search, the police detained and threatened Ms. Rubin. *Id.* at 3.

The plaintiffs brought two claims under 42 U.S.C. § 1983: First, that "the defendant officers wrongfully and unlawfully stopped, arrested, detained and incarcerated, plaintiff Nelson." Dkt. No. 3 at 3. Second, that the officers "commenced an illegal search" of a home and "threatened, handcuffed and detained plaintiff Rubin in her own home without any justification whatsoever."[1] *Id.* at 4. Mr. Nelson's claim resulted in a hung jury; Ms. Rubin's, a $12,500 judgment in her favor. Dkt. No. 45 at 2–3.

## II. LEGAL STANDARD

### a. Attorneys' Fees

In a § 1983 suit, a court may award "a reasonable attorney's fee" to a "prevailing party." 42 U.S.C. § 1988(b). When, as here, some claims are successful and others are not, it is crucial that the court engage in this two-step inquiry: First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Under the first prong, unless the successful and unsuccessful claims are interrelated, "a court must confine fee awards to work done on the successful claims." *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). The claims are interrelated if they "share a common core of facts or are based on related legal theories." *Id.* at 1537 (citing *Hensley*, 461 U.S. at 434–35). The second prong requires reasonableness, for which "the most critical factor is the degree of success obtained." *Hensley*,

---

[1] Both Mr. Nelson and Ms. Rubin alleged an illegal search of the home, so any work done on this issue benefitted both plaintiffs. For purposes of Ms. Rubin's motion for attorney's fees and costs, the Court will treat the home-search issue as part of Ms. Rubin's claim.

461 U.S. at 436. To determine whether the fees sought are reasonable, the Supreme Court noted that "[t]here is no precise rule or formula." *Id.* As such, even when a § 1983 plaintiff's recovery pales in comparison with the amount sought, the court need not necessarily reduce attorney's fees proportionately. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion). Indeed, in *Rivera* the Supreme Court affirmed an award of $245,456.25 in attorney's fees when the plaintiffs recovered only $33,350 in damages. *Id.* at 564–67. And though *Rivera* was a plurality opinion, the D.C. Circuit relied on it in rejecting a "rule of proportionality" with respect to the D.C. Consumer Protection Procedures Act. *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000).

## III.  ANALYSIS

### a. Ms. Rubin's claim is distinct from Mr. Nelson's.

While the first *Henley* prong opens the door wide for discretion short of abuse, D.C. Circuit cases provide guidance for how to apply it. When claims share neither a common core of facts nor legal theories, they are unrelated. For example, in *Brooks*, the plaintiff sought recovery from his employer after a toe injury for total disability, and though that claim was unsuccessful, the administrative law judge on his own motion awarded him compensation for partial disability. 963 F.2d at 1534. Addressing attorney's fees on appeal, the D.C. Circuit held that the unsuccessful total-disability claim and successful partial-disability claim were unrelated as a matter of law. *Id.* at 1539–40. They were based on different factual theories because "[t]he facts needed to demonstrate total disability . . . go well beyond the simple medical reports needed to establish a partially dysfunctional foot." *Id.* at 1539. And that they were based on different legal theories was evidenced by the fact that Brooks never sought recovery based on partial disability; the ALJ had to bring it up himself. *Id.*

3

By contrast, if claims share *either* a common core of facts *or* common legal theories, they are interrelated. In *Goos v. National Ass'n of Realators*, the D.C. Circuit remanded a 30% reduction in attorney's fees because the district court focused on the distinct legal theories to the exclusion of the common core of facts. 997 F.2d 1565, 1569 (D.C. Cir. 1993). In the underlying wrongful dismissal case, Goos brought two claims: the claim alleging violation of the District of Columbia Human Rights Act was successful, while the claim alleging breach of contract based on the employee handbook was unsuccessful. *Id.* at 1567. Though based on distinct legal theories, "both claims focused on a single, necessary factual issue: whether the NAR had dismissed Ms. Goos in retaliation . . . ." *Id.* at 1569.

Here, the claims are distinct (with one exception discussed *infra* Part III.c & n.4). On the facts, these claims are more like those in *Brooks* than those in *Goos*. The facts needed to show an unlawful automobile stop and unlawful arrest of Mr. Nelson have little overlap with the facts needed to show an unlawful search of a home and unlawful detention during that search of Ms. Rubin. The incidents took place at a different time, at a different place, in a different setting, and with different plaintiffs. The facts of these claims are thus even more unrelated than those in *Brooks*: in *Brooks*, at least the claims were based on injuries to the same person.

With respect to the legal theories, these are also distinct. While both claims stem from the Fourth Amendment, an automobile stop and false arrest are different events with different jurisprudence than the search of a home and detention of a person during that search. *Hensley* contemplated a more specific commonality. Indeed, the purpose of the relatedness inquiry is "to prevent claimant from 'piggybacking' fees incurred for work done on losing claims onto unrelated winning issues." *Brooks*, 963 F.2d at 1537. That purpose would not be achieved here

4

if this Court were to award fees to Ms. Rubin for work done on Mr. Nelson's claim based on their broad Fourth Amendment commonality.

### b. Ms. Rubin's attorney's fees should not be reduced further because of the limited success on her claim.

Although Ms. Rubin sought $2.5 million and the jury awarded her only $12,500, this Court will not reduce her fees on that ground. Supreme Court and D.C. Circuit precedent make it clear that proportionality is not required. *See Rivera*, 477 U.S. at 574; *Williams*, 225 F.3d at 747. After all, in *Rivera*, the Supreme Court affirmed an award of attorney's fees that was more than seven times the plaintiff's damages. *Rivera*, 477 U.S. at 564–67. Here, the amount this Court will award after accounting for the distinct claims is less than double the damages. And given the disturbing facts underlying Ms. Rubin's claim, a damage award that exceeded the attorney's fees sought would have been appropriate anyway. *See* Dkt. No. 62 at 81–90.

### c. A 50% reduction of the attorney's fees sought is fair.

In light of Ms. Rubin's claim of illegal search and detention being distinct from Mr. Nelson's claim of illegal stop and false arrest, this Court must now decide how the distinction affects the award of attorney's fees. The plaintiffs' attorney, Gregory Lattimer, wrote that the defendant "has not and cannot identify a single hour of billable time that would not have been incurred had plaintiff Rubin's claim been litigated separate and apart from the claims of plaintiff Nelson." Pls.' Reply 2. This Court is happy to take up the challenge.[2] For starters, Mr. Lattimer logged a total of 27 hours for trial. Dkt. No. 63-2. Because he did not specify how much time he spent focused on Mr. Nelson's claim and how much on Ms. Rubin's, it is up to this Court to make its best guess as to the division of labor. This Court finds that a 50/50 split is a fair guess

---

[2] "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.

and so reduces the time logged for trial by half. After trial, Mr. Lattimer logged 2.5 hours for mediation. *Id.* These hours are hereby eliminated for calculating Ms. Rubin's fees award: because Ms. Rubin's claim succeeded at trial and Mr. Nelson's ended in a hung jury, it is safe to assume—no information having been presented to the contrary—that all of that time was dedicated to mediating Mr. Nelson's claim. Finally, Mr. Lattimer logged 6.25 hours relating to the plaintiffs' Motion for Leave to File Second Amended Complaint. *Id.* That motion dealt entirely with Mr. Nelson's claim for illegal detention and strip searches following a false arrest. *See* Dkt. No. 34-1. So this Court may eliminate those hours, too.

To be sure, some hours logged should be awarded in full because it is likely that separating the claims would not have reduced time spent. For example, D.C.'s Motion to Compel Discovery raises identical issues with respect to both plaintiffs. *See* Dkt. No. 16. So Ms. Rubin should get fees for the full time Mr. Lattimer took to review the motion. As another example, the plaintiffs' pretrial statement included some facts particular to each plaintiff but mostly included proposed *voir dire* and jury instructions applicable to both. *See* Dkt. No. 22. This Court will award fees for the full time logged in drafting it.

After taking into account hours that should be eliminated, hours that should remain in full, and hours that should be split in half, and hours that should otherwise be reduced,[3] this Court finds the total to be a little less than half of the hours logged. However, because there is a slight overlap between the plaintiffs' claims,[4] the Court will raise the percentage to one half.

---

[3] The parties dispute whether quarter-hour billing instead of tenth-hour billing is acceptable. *Compare* Defs' Opp'n 7–8, *with* Pls' Reply 3–4. At least two cases in this district warn against quarter-hour billing. *A.C. ex rel. Clark v. District of Columbia*, 674 F. Supp. 2d 149, 156–57 (D.D.C. 2009); *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 44 n.5 (D.D.C. 1999). This Court explicitly holds that tenth-hour billing is required. As such, in estimating the percentage of fees to award, this Court has reduced certain *de minimus* tasks from .25 to .10 hours, *e.g.*, "Review of Motion for Ext. Of Time Filed by DC" and "Review of Court's Sched. Order." Dkt. No. 63-2.

[4] From the Pretrial Order: "If the jury returns a verdict that plaintiff Nelson did not consent to the search of his automobile, they jury shall be instructed that the search warrant authorizing the search of plaintiff Nelson's

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART AND DENY IN PART Ms. Rubin's motion for attorney's fees and litigation costs. Specifically, the Court will award Ms. Rubin $21,978.75 for attorney's fees and $1,289.80 for costs for a total of $23,268.55.

A separate Order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, U.S. District Judge, on September 25, 2013.

---

apartment was illegally obtained and that plaintiffs are thereby entitled to damages for the illegal search of their apartment." Dkt. No. 33 at 2. Even though the jury hung on this issue, Dkt. No. 45 at 2, the legality of the apartment search is related Ms. Rubin's successful search and seizure claim, and therefore this narrow issue of consent to search the automobile is also related to the successful claim.